## LIVERMORE v. BRAUER.

(Circuit Court of Appeals, Second Circuit. January 13, 1904.)

### No. 75.

1. VESSELS—SALE—CONTRACTS—CONSTRUCTION.

Where a contract for the sale of a vessel required the sellers to deliver to the buyer all necessary papers and documents to vest in him a good and sufficient, unincumbered title to the ship and her equipment, together with "her unexpired insurance fully paid," and no policies were mentioned in the contract, and the buyer did not know how many policies there were, or by what underwriters they had been issued, and only knew that the ship was insured for a certain amount, the contract should not be construed to require a transfer of the identical policies under which the vessel was then insured, some of which could not be transferred over the insurer's objection, but was sufficiently complied with by an offer to vest in the buyer equivalent policies.

2. SAME.

Where a contract for the sale of a vessel required the sellers to deliver the ship, together with her unexpired insurance fully paid up, but no policies were mentioned in the contract, and the purchaser did not know how many policies there were, nor by whom issued, the seller was not required to vest the purchaser with the title to the particular policies then covering the ship, but only title to equivalent policies.

3. SAME—CONCURRENT CONDITIONS—ACTION FOR BREACH.

    Where a contract of sale requires further acts to be done than the mere delivery of the property and the payment of a price at the same time, the conditions are concurrent, and neither party to such contract can maintain an action for a breach by the other party, without showing performance of conditions on his own part, or an offer to perform, even though it is not certain, from the terms, which is to do the first act.

In Error to the Circuit Court of the United States for the Southern District of New York.

J. Parker Kirlin, for plaintiff in error.

L. E. Warren, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a verdict for the plaintiff entered by the direction of the court. The action was brought to recover a sum of money deposited by the plaintiff with the defendant pursuant to a written contract between the plaintiff and Macbeth & Gray, the owners of the steamship Dunmore, for the purchase of the vessel. The contract was dated December 18, 1900, and fixed the purchase price at the sum of £21,000. The contract provided that Macbeth & Gray should on or before February 1, 1901, execute and deliver to plaintiff all necessary papers and documents to vest in him a good and sufficient, unincumbered title to the ship and her equipment, "her unexpired insurance fully paid," and her earnings from and after the date of the contract. The contract also provided that plaintiff should deposit with Livermore, the defendant, £2,100; that, upon the delivery to plaintiff by Macbeth & Gray of the necessary papers and documents to vest in him title to the ship, her equipments, and the insurance, he should, at Glasgow, Scotland, pay them £7,000, deliver to them an approved first mortgage upon the vessel for £11,900, conditioned as specified in the contract, and deliver to them an order upon Livermore for the £2,100. It further provided that, in the event of either party failing to fulfill, Livermore should pay over the £2,100 to the other party. The action was brought upon the theory that Macbeth & Gray neglected and refused to fulfill the contract, and this was the only issue presented by the pleadings.

By previous arrangement the parties to the contract met at the office of Macbeth & Gray, at Glasgow, on the 1st day of February, 1901, to exchange the documents and close the purchase. In directing a verdict, the trial judge ruled that it appeared by the evidence that Macbeth & Gray had failed to perform the contract upon their part on that day, and that there was no question of fact for the jury. The principal assignment of error is based upon the exception to that ruling.

If the contract required Macbeth & Gray to vest a good title in plaintiff to the policies of insurance upon the ship in force on December 18th, it is conceded that they did not perform, and were not ready to perform, that condition. At the date of the contract the insurance aggregated in amount £13,850, all of which would expire on the ensuing 20th day of February. It had been effected in various mutual

underwriting associations, in which the insured becomes a member, and pays an initial premium and subsequent assessments so long as he remains a member. By the rules of these associations, an insurance becomes void upon the nonpayment by the member of any future call, and the policies cannot be transferred without the written consent of the association. When the parties met at Glasgow some of the associations had refused to consent to a transfer of the insurance covered by their policies. The amount of this insurance was £2,500. The other associations had consented to the transfer of their insurance, but their formal written consent had not been obtained. The evidence introduced by the defendant was to the effect that at the interview Macbeth & Gray offered to procure new insurance for Brauer to the extent of £2,500, or to stand as insurers themselves to that extent, and furnish him a guaranty for their responsibility by the Bank of Scotland; that the plaintiff made no objection to this proposition; that the matter was under discussion when the parties separated to go to luncheon; and that they separated with the understanding that the plaintiff would return after luncheon and resume the interview. It further appeared that the plaintiff did not return, but sent a letter to Macbeth & Gray, notifying them, in substance, that he declined their tender of performance, because they were unable to transfer the insurance policies to him; and immediately thereafter the plaintiff left Glasgow for Liverpool. The evidence for the defendant tended to show that there was no formal offer of performance by either party at the interview. It appeared that the plaintiff was ready to perform the conditions on his part.

The contract did not, in terms, require Macbeth & Gray to vest the plaintiff with good title to the existing policies on the ship. The condition was to vest him with good title "to the unexpired insurance fully paid." No policies are mentioned in the contract, and when it was made the plaintiff did not know how many policies there were, or by what underwriters they had been issued. He only knew that the ship was insured for a certain amount. Policies of insurance ordinarily are conditioned to become void upon a transfer of the insured property, and to become void upon a transfer of the instrument without the consent of the underwriter; and it is unreasonable to suppose that either party to the contract contemplated that its fulfillment should be defeated in case any of the underwriters should see fit to insist upon either of these conditions. It is quite inconceivable that the plaintiff wished to acquire any specific policies. He wanted to save himself the cost of the insurance during the life of the existing insurance. We think the contract does not mean that Macbeth & Gray should vest him with the title to the particular policies covering the ship, and that it only obligated them to vest him with title to equivalent policies. Adopting this view, if Macbeth & Gray had made tender of such insurance at the interview at Glasgow, they would have satisfied the condition.

We think there was a question of fact for the jury. If, as the evidence for the defendant tended to show, there was no offer of performance by the plaintiff, he was not entitled to recover. Upon the other hand, if, as the evidence tended to show, the plaintiff deprived Macbeth

& Gray of an opportunity of tendering performance on their part, he cannot insist upon their default.

In contracts of sale the delivery of the property and the payment of the price are presumably concurrent acts, and, when the contract requires further acts relating to the transfer to be done at the same time, the conditions are concurrent. Neither party to such a contract can maintain an action for a breach by the other without showing performance of the conditions upon his own part, or an offer to perform, even though it is not certain from the terms which is to do the first act. This was the rule stated by Lord Mansfield in Kingston v. Preston, 2 Doug. 698, and is the accepted rule to-day. Mere readiness to perform is not equivalent to performance, but an actual offer of performance may be excused when there is a willingness and an ability to perform, and performance or an offer has been prevented or waived by the conduct of the other party. Neither party can insist upon the default of the other if he was in default himself, and, where both are in default, either party, after relieving himself of his default by performance, or an offer to perform, can require the other to perform within a reasonable time. Brown v. Slee, 103 U. S. 828, 837, 26 L. Ed. 618; Lester v. Jewett, 11 N. Y. 453; Nelson v. Plimpton Fireproof Co., 55 N. Y. 480.

The judgment is reversed.